IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| ADAMS BAYOU MARINE MANAGEMENT COMPANY, LLC, | § § § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. 1:23-CV-84-MJT-CLS |
| v. | § § | |
| DOUBLE CHINE, LLC, | § § § | |
| *Defendant,* | § § | |
| v. | § § § | |
| MARY E. SNEED FAMILY TRUST, *et al.*, | § § § | |
| *Third-party Defendants*. | § § | |

**ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION FOR ATTORNEY'S FEES (DOC. #66)**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred (doc. #68) Defendant Double Chine, LLC's Motion for Attorney's Fees (doc. #66) to the undersigned magistrate judge for consideration and disposition. After review, the undersigned will GRANT IN PART and DENY IN PART Defendant's motion.

**I.  Background**

In this diversity action, the parties dispute ownership of a 2.073-acre tract of land in Orange County, Texas. On February 28, 2023, Plaintiff Adams Bayou Marine Management Company, LLC ("Adams Bayou") filed this lawsuit against Defendant Double Chine, LLC ("Double Chine"), bringing a claim of trespass to try title based on theories of adverse possession and superior record

title. (Doc. #1.) Mr. Chester Slay is the sole manager of Adams Bayou. (*Id.* ¶ 6.) On June 20, 2024, Double Chine filed a Motion for Discovery Sanctions (doc. #37), seeking dismissal of Adams Bayou's claims with prejudice—known as death-penalty sanctions—for alleged discovery violations and bad-faith conduct. Double Chine's motion was fully briefed (docs. #58, #59, #60) and the undersigned held an evidentiary hearing on the matter on October 7, 2024. Each party made an in-person appearance at the hearing through counsel and offered thoughtful argument.

On November 26, 2024, the undersigned entered an Order Denying in Part and Granting in Part (doc. #64) Double Chine's Motion for Discovery Sanctions (doc. #37). Therein, the undersigned found that Adams Bayou willfully violated the district court's Order Setting Civil Action for Rule 16 Management Conference (doc. #4) and the then-operative Scheduling Order (doc. #12) by failing to diligently produce records, including three affidavits, and not providing searchable PDF versions of discoverable material with metadata, or alternatively, for failing to adequately explain why the material could not be produced in compliance with the court's Orders. (Doc. #64 at 17–18.)

The undersigned also determined that Adams Bayou's failure to obey the court's Orders (docs. #4, #12) was not substantially justified and ordered it to pay Double Chine reasonable attorney's fees related to its disobedience pursuant to Federal Rule of Civil Procedure 37(b)(2)(C).[1] (Doc. #64 at 19.) To ensure an accurate lodestar calculation, the undersigned conditioned the award on Double Chine producing a properly redacted accounting of rates, hours, and costs originating from Adams Bayou's sanctionable conduct no later than December 9, 2024. (*Id.*) Double Chine complied, filing the instant Motion for Attorney's Fees (doc. #66) with supporting

---

[1] In so ruling, the undersigned accounted for Adams Bayou "not bother[ing] to respond to Double Chine's request" for attorney's fees and subsequent "fail[ure] to satisfy its burden 'to show that an award of attorney's fees would be unjust or that [its] position was substantially justified." (Doc. #64 at 17 (quoting *Dexon Computer, Inc. v. Cisco Sys., Inc.*, No. 5:22-CV-53-RWS-JBB, 2023 WL 9645470, at *2 (E.D. Tex. June 2, 2023).)

2

documentation (docs. #66-1, #66-2). Adams Bayou has not filed a response. Double Chine's motion (doc. #66) is ripe for review.

## II.   Legal Standard

For failing to comply with a discovery order, Federal Rule of Civil Procedure 37(b)(2)(C) authorizes a court to "order the disobedient party … to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b(2)(C); *see also Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Chapman & Cole & CCP, Ltd. v. Itel Container Int'l B.V.*, 865 F.2d 676, 687 (5th Cir. 1989)). In assessing what are reasonable attorney's fees, courts engage in "a two-step process." *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 415 (5th Cir. 2022) (citing *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016)). For the first step, courts use "the 'lodestar' method to calculate attorneys' fees, which is applied by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for the work at issue." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) (citing *Tollett*, 285 F.3d at 367); *see also CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 326–27 (5th Cir. 2023) (citations omitted). Double Chine "bears the burden of proof on these issues." *Marquis v. Sadeghian*, No. 4:19-CV-626-RWS-KPJ, 2021 WL 4148755, at *8 (E.D. Tex. Sept. 13, 2021) (citing *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996)); *Fessler*, 23 F.4th at 415–16.

"Though the lodestar is presumed reasonable, the court may enhance or decrease it based on the twelve *Johnson* factors"—the second step. *Combs*, 829 F.3d at 392 (first citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010); and then citing *Jimenez v. Wood Cnty.*, 621 F.3d 372, 379 (5th Cir. 2010), *aff'd on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011)). In *Johnson*

*v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), the Fifth Circuit articulated twelve factors with which a court may deviate from the lodestar: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Marquis*, 2021 WL 4148755, at *11 (quoting *id.*); *Hoenninger v. Leasing Enterprises, Ltd.*, No. 22-50765, 2023 WL 5521058, at *2 & n.18 (5th Cir. Aug. 25, 2023) (citing *id.*). The "'most critical factor' in determining a reasonable fee 'is the degree of success obtained.'" *Fessler*, 23 F.4th at 415 (quoting *Combs*, 829 F.3d at 394); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 & n.10 (5th Cir. 2006) (quoting *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983))).

### III.   Discussion

Double Chine is requesting an award of $30,660.00 in attorney's fees.  (Doc. #66, ¶ 10.) It relies on the sworn affidavit of Mr. Clayton P. Jackson, lead counsel for Double Chine in this case. (Doc. #66-1, ¶ 2.)  Mr. Jackson attests that his hourly billable rate is $150.00 and that he "spent 204.4 hours prosecuting Double Chine's motion for discovery sanctions … between January and December 2024." (*Id.* ¶¶ 9–10.)  His efforts "included, among other things: [1] drafting Double Chine's motion for sanctions; [2] investigating the information in Mr. Slay's possession, custody, or control regarding Shine & Associates; [3] drafting the Declaration of Joe Mattox of Shine & Associates; [4] drafting several deficiency letters to Adams Bayou; [5]

4

preparing for the discovery sanctions hearing; [6] drafting Double Chine's reply in support of its motion for sanctions; and (7) traveling to Beaumont on numerous occasions." (*Id.* ¶ 9.) Mr. Jackson supplements his claims with a detailed accounting. (Doc. #66-2 at 2–4.)

### A. Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Meier v. UHS of Delaware, Inc.*, No. 4:18-CV-615, 2023 WL 7164909, at *1 (E.D. Tex. Oct. 31, 2023) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984)). "The relevant legal community is the community where the district court sits." *Young v. Erschick*, No. 4:21-CV-644, 2024 WL 2212365, at *3 (E.D. Tex. May 16, 2024) (citing *Tollett*, 285 F.3d at 368); *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). "The trial court itself is also considered an expert as to the reasonableness of attorneys' fees and therefore may exercise its own expertise and judgment in making an independent valuation of appropriate attorneys' fees." *Cypers v. BankCard Cent., LLC*, No. 4:21-CV-382, 2024 WL 5047855, at *3 (E.D. Tex. Dec. 9, 2024) (citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (citing *In re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir. 1978))).

As lead counsel in this case, Mr. Jackson is currently employed by Fidelity National Law Group as a trial and appellate attorney focusing on real estate title disputes. (Doc. #66-1, ¶¶ 2–3.) Mr. Jackson comes with over five years of complex litigation experience, including as an associate at the law firm of Bass, Berry & Sims, PLC in Memphis, Tennessee, where he represented clients in complex business disputes, securities litigation, antitrust matters, and government investigations. (*Id.* ¶¶ 6–7.) He also clerked for two federal judges in the Western District of Tennessee and the Eastern District of Arkansas. (*Id.* ¶ 8.) Considering Mr. Jackson's years of

experience as a litigator generally and more specifically in real estate matters such as this case, as well as the court's own expertise with the Eastern District of Texas, the undersigned is satisfied that a $150.00 hourly rate is reasonable. *Cypers*, 2024 WL 5047855, at *3; *Young*, 2024 WL 2212365, at *3. Although "the reasonable hourly rate for a particular community is [generally] established through affidavits of other attorneys practicing there," *Whiteside v. Cimble Corp.*, No. 4:17-CV-404-KPJ, 2024 WL 3825237, at *5 (E.D. Tex. Aug. 14, 2024) (quoting *Tollet*, 285 F.3d at 368), the "'affidavits of counsel may alone be sufficient proof' to establish the reasonable hourly rate,'" *Meier*, 2023 WL 7164909, at *3 (quoting *Smith & Fuller, P.A.*, 685 F.3d at 491); *Young*, 2024 WL 2212365, at *3. Additionally, Mr. Jackson's hourly rate "is *prima facie* reasonable" because Adams Bayou has "not opposed" it. *Hamm v. Acadia Healthcare Co., Inc.*, No. 20-1515, 2024 WL 1463168, at *7 & n.31 (E.D. La. Apr. 4, 2024), *aff'd*, No. 20-1515, 2024 WL 4765477 (E.D. La. Nov. 13, 2024) (first citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995); and then citing *Powell v. Comm'r*, 891 F.2d 1167, 1173 (5th Cir. 1990)); *see, e.g.*, *Tollett*, 285 F.3d at 369 (upholding $300.00 hourly rate as reasonable, despite "questions[s]," because defendant did not contest it); *Baulch v. Johns*, 70 F.3d 813, 818 n.8 (5th Cir. 1995) (approving requested hourly rate of $250.00–$330.00 where such rate was not questioned by nonmovant or subjected to adversarial testing).

### B. Reasonable Hours Expended

The party seeking reimbursement of attorney's fees also bears the burden of establishing the number of hours expended by presenting adequately recorded time records as evidence. *Jackson v. Mistry Hosp. LLC*, No. 1:19-CV-00422, 2021 WL 1392869, at *1 (E.D. Tex. Apr. 12, 2021) (citing *Riley*, 99 F.3d at 760). "The Court should include only those hours reasonably expended, and exclude any time that is excessive, duplicative, unnecessary, or inadequately

documented.  *Id.* (citing *Riley*, 99 F.3d at 760); *Young*, 2024 WL 2212365, at *3 (citation omitted); *Franciscan All., Inc. v. Becerra*, 681 F. Supp. 3d 631, 637 (N.D. Tex. 2023) (quoting *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997)) ("The court must eliminate excessive or duplicative time.").

Here, Mr. Jackson's ledger sufficiently itemizes and describes the work originating from Adams Bayou's sanctionable conduct and Double Chine's motion for sanctions (doc. #37), the attorney who completed the work (in this case, solely Mr. Jackson), and the hours expended thereon.  *See* (doc. #66-2 at 2–4.)  Moreover, Adams Bayou's failure to "object to particular billing entries as inadequately documented" does not impose on the undersigned a "*sua sponte* [obligation] to sift through fee records searching for vague entries or block billing."  *Carroll v. C-Con Servs., Inc.*, No. 4:21-CV-327-SDJ, 2024 WL 3404787, at *3 (E.D. Tex. July 11, 2024) (quoting *Hoffman v. L & M Arts*, No. 3:10-CV-0953, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015) (citing *Kellstrom*, 50 F.3d at 325)); *see also Hoffman*, 2015 WL 3999171, at *5 (collecting cases) ("It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention.").

Nevertheless, the undersigned finds that 7.5 hours spent by Mr. Jackson on Double Chine's *instant* motion are not reasonably expended hours.  The undersigned's Order awarded Double Chine reasonable attorney's fees for Adams Bayou's "sanctionable conduct and the filing of" its motion for sanctions (doc. #37).  (Doc. #64 at 19.)  Mr. Jackson's entries for "[r]eview of Order on sanctions," "[r]esearch on attorney's fees motion," and "draft[ing] fee documentation requested by [c]ourt" do not fall within this ambit.  (Doc. #66-2 at 4.)  By its own terms, the Order did not grant Double Chine attorney's fees arising from the Order itself; rather, the Order's award was for Double Chine's expenses stemming from Adams Bayou's sanctionable conduct *culminating in the*

7

*award*. (Doc. #64 at 17, 19.) The undersigned therefore finds that the reduction of these "excessive" and "unnecessary" 7.5 hours more accurately comports with the Order's award. *Jackson*, 2021 WL 1392869, at *1; *cf. Whiteside*, 2024 WL 3825237, at *5 (citation and quotation mark omitted) ("In determining whether the hours expended are reasonable, the Court can draw from its own experience as a lawyer and a judge."). Accordingly, Mr. Jackson's 196.9 hours reasonably expended multiplied by his reasonable hourly rate of $150.00 results in a $29,535.00 lodestar. *Smith & Fuller, P.A.*, 685 F.3d at 490; *CEATS, Inc.*, 71 F.4th at 326. In turning to the *Johnson* factors, the court prefaces that Mr. Jackson did not reduce the hours expended or amount requested in any way. *See* (doc. #66-2 at 2–4.)

### C. The *Johnson* Factors

"After determining the lodestar amount, the district court may adjust the lodestar up or down in accordance with the relevant *Johnson* factors not already included in the lodestar." *Meier*, 2023 WL 7164909, at *5 (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993)). As reasoned above, the $29,535.00 lodestar does not take into account "the degree of success obtained," the "most critical factor in determining a reasonable fee." *Fessler*, 23 F.4th at 415; *Saizan*, 448 F.3d at 799 & n.10. Because Double Chine "achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate [*i.e.*, the lodestar] may be an excessive amount." *Holmes v. Reddoch*, No. 19-12749, 2024 WL 4989454, at *4 (E.D. La. Dec. 5, 2024) (quoting *Hensley*, 461 U.S. at 436).

Double Chine sought dismissal of Adams Bayou's claims with prejudice for alleged discovery abuses. *See* (doc. #37.) In so doing, however, Double Chine "went deep for an immediate score instead of methodically matriculating down the field." (Doc. #64 at 16 (quoting *ReSea Project ApS v. Restoring Integrity To the Oceans, Inc.*, No. SA-21-CV-1132-JKP, 2022 WL

8

17724419, at *7 (W.D. Tex. Dec. 15, 2022).) Double Chine bore the burden to show that litigation-ending sanctions were warranted by satisfying the four *Connor* factors: "(1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation 'substantially prejudice[d] the opposing party'; and (4) a lesser sanction would not 'substantially achieve the desired deterrent effect.'" *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019) (quoting *FDIC v. Conner*, 20 F.3d 1376, 1380–81 (5th Cir. 1994)); *ReSea Project ApS*, 2022 WL 17724419, at *7 (citing *Ford v. Lee*, 137 F.3d 1351, 1351 (5th Cir. 1998) (per curiam)). Notwithstanding the undersigned finding that Adams Bayou committed willful discovery violations, Double Chine woefully failed to satisfy the fourth *Connor* element. (Doc. #64 at 9–17.)

To start, Double Chine's evidence of Adams Bayou's bad faith was, at best, minimally sufficient to satisfy the first *Connor* element. It premised its claims of bad faith on four categories of misconduct: (1) withholding of documents; (2) Mr. Slay's inaccurate deposition testimony; (3) suspicious documents; and (4) production of documents in searchable PDF format with no metadata. (*Id.* at 9–15.) The undersigned found no sanctionable conduct committed by Adams Bayou with respect to categories two and three,[2] and nor did two of the three allegedly withheld documents under the first category constitute sanctionable conduct because Adams Bayou either diligently turned them over or could not come into possession of copies.[3] (*Id.* at 10.) Thus, although Double Chine proffered enough evidence to show bad faith on Adams Bayou's behalf, "many of Double Chine's allegations [were] conjectural and the relief sought … not

---

[2] For the third category, Double Chine argued that Mr. Slay manufactured three witnesses and their affidavits because Mr. Slay identified and produced them after his deposition had occurred. (Doc. #64 at 13.) The undersigned indeed found this sanctionable conduct but on the "relevant" ground of dilatoriness and determined that Double Chine's inference of fabrication based on Mr. Slay's foot-dragging was "not reasonable." (*Id.* at 13–14.) The same reasoning applied to three invoices also challenged by Double Chine as manipulated. (*Id.* at 14.)

[3] In fact, Double Chine did not respond to Adams Bayou's claims as to these two bundles of documents. (*Id.* at 10.)

commensurate." (*Id.* at 16.) Double Chine's demonstration of substantial prejudice was similarly tepid because "[m]uch of [its] prejudice" was curable by subsequent depositions of Mr. Slay and the three belatedly-identified witnesses. (*Id.* at 17.) Individuals, moreover, who Adams Bayou already "welcomed" Double Chine to depose. (*Id.* (citing doc. #58 at 12).) All told, "relative to the relief sought," *Cruson v. Jackson Nat'l Life Ins. Co.*, No. 4:16-CV-912-ALM, 2021 WL 3702483, at *5 (E.D. Tex. June 4, 2021) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998)), Double Chine "missed the mark" and "overplayed its hand," (*id.* at 16). Consequently, far lesser sanctions than a litigation-ending dismissal with prejudice were "just and related to the particular claims which were at issue in the court's orders." (*Id.* at 18.)

Concomitantly, the $29,535.00 lodestar "is not commensurate" with Adams Bayou's sanctionable conduct and Double Chine's efforts litigating its motion for sanctions (doc. #37). The undersigned's Order based Double Chine's award of attorney's fees on "Adams Bayou's *sanctionable* conduct." (*Id.* at 17 (emphasis added).) Much of what Double Chine alleged was not sanctionable conduct and "it would be fundamentally unfair" for Adams Bayou to defray Double Chine's unsuccessful efforts to convince the undersigned otherwise. *Holmes*, 2024 WL 4989454, at *7. The $29,535.00 "lodestar is [just] not proportional to the degree of success obtained in the lawsuit and must be" adjusted. *Id.* The vastness between the death-penalty sanctions sought by Double Chine and what the undersigned ultimately found to be appropriate sanctions qualifies this as an "exceptional case[]" necessitating an "adjust[ment] [of] the lodestar … down in accordance with the" eighth *Johnson* factor. *Meier*, 2023 WL 7164909, at *5; *cf. Fessler*, 23 F.4th at 416 (quoting *Hensley*, 461 U.S. at 435) ("It is axiomatic that 'work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved ... and therefore no fee may be awarded for services on [an] unsuccessful claim.'").

Accordingly, the $29,535.00 lodestar is adjusted downward to $3,535.00. *Young*, 2024 WL 2212365, at *6 (quoting *Verginia McC v. Corrigan-Camden Indep. Sch. Dist.*, 909 F. Supp. 1023, 1032 (E.D. Tex. 1995) (quoting *Hensley*, 461 U.S. at 436)) ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."); *Abner v. Kansas City S. Ry. Co.*, 541 F.3d 372, 383 (5th Cir. 2008) (citation omitted); *Kellstrom*, 50 F.3d at 328, 328 n.13 (5th Cir. 1995) (citation omitted). This amount "serve[s] the dual function of reimbursing the moving party and deterring the violator of the discovery orders.'" *Marquis*, 2021 WL 4148755, at *8 (quoting *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986)). After careful consideration, the undersigned does not find that the other *Johnson* factors warrant an additional downward or upward variance. The undersigned also wants to make clear that the earlier Order did not find counsel for Adams Bayou responsible for any of the sanctioned conduct and therefore is not liable to Double Chine for the award of attorney's fees in this Order. (Doc. #64 at 15–16.)

### IV.  Order

Defendant Double Chine, LLC's Motion for Attorney's Fees (doc. #66) is **GRANTED IN PART** and **DENIED IN PART**. Defendant Double Chine, LLC is entitled to $3,535.00 in attorney's fees from Plaintiff Adams Bayou Marine Management Company, LLC.

**IT IS SO ORDERED**.

**SIGNED this the 7th day of February, 2025.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE